IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| GARRETTE JOHN TRUE,<br><br>Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>Defendant. | No. C15-3089<br><br>RULING ON JUDICIAL REVIEW |

TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. PRINCIPLES OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    A. True's Education and Employment Background . . . . . . . . . . . . . . . . . 4
    B. Vocational Expert's Testimony from Administrative
        Hearing Held on September 10, 2013 . . . . . . . . . . . . . . . . . . . . . . 4
    C. True's Medical History . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    D. True's Vocational Services Reports . . . . . . . . . . . . . . . . . . . . . . 9

IV. CONCLUSIONS OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    A. ALJ's Disability Determination . . . . . . . . . . . . . . . . . . . 11
    B. Objections Raised By Claimant . . . . . . . . . . . . . . . . . . . . 14
    C. Reversal or Remand . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

V. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

VI. ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 4) filed by Plaintiff Garrette John True on January 29, 2015, requesting judicial review of the Social Security Commissioner's decision to deny his application for Title XVI supplemental security income ("SSI") benefits.[1] True asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him SSI benefits. In the alternative, True requests the Court to remand this matter for further proceedings.

## II. PRINCIPLES OF REVIEW

Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court "'must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.'" *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014) (quoting *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006)). Substantial evidence is defined as less than a preponderance of the evidence, but is relevant evidence a "'reasonable mind would find adequate to support the commissioner's conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2011)).

---

[1] On April 13, 2015, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

2

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Draper v. Colvin*, 779 F.3d 556, 559 (8th Cir. 2015) ("'If substantial evidence supports the Commissioner's conclusions, th[e] court does not reverse even if it would reach a different conclusion, or merely because substantial

evidence also supports the contrary outcome.'" *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007)."); *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) ("'As long as substantial evidence in the record supports the Commissioner's decision, [the court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently.' *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).").

### III. FACTS

#### A. True's Education and Employment Background

True was born in 1991. He is a high school graduate. He also received job training through vocational services after high school. True has limited work experience as a retail cashier and night stocker at a grocery store.

#### B. Vocational Expert's Testimony from Administrative Hearing Held on September 10, 2013

At the administrative hearing, the ALJ provided vocational expert Carma Mitchell with a hypothetical for an individual who is limited to:

> lifting . . . 50 pounds occasionally, 25 pounds frequently, sitting and standing for six of an eight-hour day, walking three blocks[.] . . . [The individual] would require a job with no contact with the general public, limited contact with fellow workers, no working at heights and no climbing of ladders, ropes, and scaffolds[.]

(Administrative Record at 62-63.) The vocational expert testified that under such limitations, True could perform the following unskilled jobs: (1) automotive detailer, (2) laundry worker, and (3) cook helper.

Next, the ALJ provided the vocational expert with a second hypothetical for an individual who is able to lift:

> 50 pounds occasionally, 25 pounds frequently, sitting and standing two hours at a time for six of an eight-hour day, walking three blocks, no climbing ladders, ropes, or

4

> scaffolds, ... no working at heights, would require a job with no contact with the general public and limited contact with fellow workers, due to drug and alcohol addiction, [the individual] would miss three [or] more days of work per month.

(Administrative Record at 63-64.) The vocational expert testified that under such limitations, True would be unable to find competitive employment.

Lastly, the ALJ provided the vocational expert with a final hypothetical for an individual who is able to lift:

> 50 pounds occasionally, 25 pounds frequently, sitting and standing two hours at a time for six of an eight-hour day, walking three blocks, no climbing ladders, ropes, and scaffolds, no working at heights, ... would require a job with no contact with the general public, limited contact with fellow workers, due to chronic pain syndrome, depression, mental impairment, or any other reason, [the individual] would miss three days of work per month.

(Administrative Record at 64.) Again, the vocational expert testified that under such limitations, True could not find competitive employment.

### C. True's Medical History

On April 28, 2008, True met with Dr. Mark Peltan, Ph.D., for a psychological evaluation.[2] Upon review of True's records, Dr. Peltan found True to be of average intelligence. Personality assessments were consistent with a diagnosis of Asperger's disorder. Dr. Peltan also noted that "[w]hile [True] does not appear to have an actual mood disorder, [he] does seem to have a rather negative outlook on life. He believes that the future 'will probably be hard.'" He worries about 'not being able to afford to live.'"[3]

---

[2] Dr. Peltan first diagnosed True with Asperger's disorder three years earlier when True was 13 years old.

[3] Administrative Record at 433.

5

Upon examination, Dr. Peltan diagnosed True with oppositional defiant disorder and Asperger's disorder. Dr. Peltan concluded that:

> Garrette True is a 16-year-old male with a history of Asperger's Disorder. He continues to exhibit the rigid, somewhat illogical thinking and perseverative problem solving style that is associated with pervasive developmental disorders. He also demonstrates odd relationship behaviors such as poor eye contact and flat affect among others. Garrette's situation is complicated by the presence of oppositional defiant disorder. Because that is occurring in the context of the Asperger's disorder, he seems even less able to compromise in terms of being more rule abiding or cooperative than would be expected from even other adolescents with oppositional defiant disorder.

(Administrative Record at 433-34.) Dr. Peltan recommended individual therapy and medication as treatment.

On November 30, 2011, at the request of Disability Determination Services ("DDS"), True was referred to Dr. Carroll D. Roland, Ph.D., for a psychological evaluation. In reviewing True's medical records, Dr. Roland noted that the records "indicated a history of Asperger's Disorder, anxiety in social settings and difficulty working around large groups of people."[4] Dr. Roland administered the Beck Depression Inventory-II test to True, and found that True's responses suggested moderate depression. True's symptoms included: (1) feeling sad much of the time; (2) having a significant sense of hopelessness; (3) mild anhedonia; (4) a loss of interest in other people or things; (5) moderate loss of energy; and (6) moderate difficulty with concentration. Upon examination, Dr. Roland diagnosed True with Asperger's Disorder, depressive disorder, and history of oppositional defiant disorder. Dr. Roland concluded that:

> Garrette True is a 20-year-old single Caucasian male experiencing Asperger's Disorder and a Depressive Disorder NOS. He continues to have impairment in the use of eye-to-

---

[4] Administrative Record at 328.

6

> eye gaze, a failure to develop peer relations appropriate to developmental level and marginal emotional reciprocity. When he becomes involved in a particular interest . . . his interest[] becomes abnormal in intensity. He has difficulty relating to others in social and occupational settings. However, Garrette states that he desires employment in a work environment that does not require frequent interaction with coworkers and the general public. A job in a repetitive work environment such as an assembly line does not appear to be beyond Garrette's capabilities. Memory and intellect are clearly sufficient for competitive employment.

(Administrative Record at 332.)

On December 12, 2011, Dr. Sandra Davis, Ph.D., reviewed True's medical records and provided DDS with a Psychiatric Review Technique and mental residual functional capacity ("RFC") assessment for True. On the Psychiatric Review Technique assessment, Dr. Davis diagnosed True with autistic disorder, affective disorder, and personality disorder. Dr. Davis determined that True had the following limitations: moderate restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Davis found that True was moderately limited in his ability to: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, sustain an ordinary routine without special supervision, work in coordination or in proximity to others without being distracted by them, complete a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior and adhere to basic standards of neatness and

cleanliness, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others. Dr. Davis concluded that:

> [True] has the ability to understand and remember at least simple instructions and in some areas, more detailed ones. He has limited work experience. He will have problems getting along with others, and would find working in the general public likely distressing. Memory and intelligence are sufficient for competitive employment. He may have some problems getting along with authority[.] . . . He will do best in an environment with minimal sensory distractions. He will need support for rapid or complex change. His grooming and appearance may not be suitable for some work environments. . . . [True's] allegations are credible.

(Administrative Record at 80-81.)

On August 20, 2013, at the request of True's attorney, Paula K. Linnevold, LISW, and Shelby R. Allen-Benitz, ARNP, both treating sources, filled out a "Medical Source Statement of Ability to Do Work Related Activities" for True. Linnevold and Allen-Benitz opined that True's ability to: (1) follow work rules, (2) relate to co-workers, (3) use judgment, (4) interact with supervisors, and (5) maintain attention and concentration is "poor." Linnevold and Allen-Benitz further opined that True is unable to deal with the public, deal with work stress, and function independently. Linnevold and Allen-Benitz explained that True "has very limited ability to function independently because he has autism. He has anxiety [and] does not understand how to relate to others in a typical way."[5] Linnevold and Allen-Benitz also determined that True's ability to understand, remember, and carry out complex job instructions or detailed instructions is "poor." Linnevold and Allen-Benitz further indicated that True's ability to behave in an emotional stable manner and demonstrate reliability is also "poor." Finally, Linnevold and Allen-

---

[5] Administrative Record at 426.

8

Benitz opined that True is unable to relate predictably in social situations. Additionally, Linnevold provided the following observations in a letter addressed to True's attorney:

> [True], like some people on the Autism Spectrum, initially appears to be a quiet young man with social anxiety. However, his disabilities go much deeper and his diagnosis and placement on the Autism Spectrum is accurate. [His] anxiety is caused by the fact that he has deficits in his sensory processing system--he isn't just shy or anxious. Because of this, he has had to rely on attempting to learn how to "be" by observation of others and how they react in given situations. This disorder is life-long and will cause [him] numerous challenges. . . .
>
> It was [True's] concern during our work that he would never be able to be fully independent from his family because there are so many basic skills that he doesn't really understand or know how to do--using a microwave oven, how people make decisions, attempts to have a give and take relationship with another person, how would he know how to take care of a home or apartment or manage money--these were all mysteries to [him]. That said, he is also bright, is politically minded, has a sense of justice and is creative with art and music.
>
> [He] is truly disabled by having autism and will likely have many problems with finding a place in the world of employment. . . . It is my opinion that [True] should be considered disabled and receive benefits.

(Administrative Record at 419.)

### D. True's Vocational Services Reports

In June and July, 2012, True was referred to NIVC Services, Inc., for vocational evaluation. In the vocational report, Emily Dykstra, a vocational service coordinator, noted that True has a diagnosis of Asperger's disorder. Dykstra further noted that:

> [True] graduated from high school in 2010 and has not had substantial employment since then. He reports that his last employment experience was at HyVee in 2011, in a

> customized training experience arranged by IVRS. He worked
> as a stock person during this experience and reports that he
> had difficulty interacting with customers. The customized
> training did not lead to employment. . . . He states that his
> disability limits his work skills because he has difficulty
> working with people.

(Administrative Record at 350.) True attended three of six vocational evaluation dates, where he was given tasks at a can redemption center, lawn service business, and food service business. In addition to missing three evaluation dates, True also arrived 15 minutes late for one evaluation date, and left another evaluation date after his 10:00 a.m. break without telling anyone. Dykstra opined that "[a]t 50%, [True's] attendance does not meet expectations for competitive employment. [His] communication about his absences does not meet expectations for competitive employment."[6] During these evaluation periods, Dykstra found that True has the ability to: (1) learn new tasks quickly, retaining verbal, demonstrated, and written instructions without repetition; and (2) focus appropriately on tasks and perform quality work. Dykstra also determined that True needed assistance in improving the following skills: (1) building a positive work history demonstrating acceptable attendance and punctuality; (2) communicating necessary information to staff regarding scheduling, absences, and reasons for needing to leave work early; (3) managing emotions and/or expectations and communicating these needs with staff if problems or concerns arise; and (4) improving comfort level and ability to communicate effectively with staff, co-workers, and peers. Dykstra recommended organizational employment training at a vocational rehabilitation work site for True.

In a letter dated September 5, 2013, Jenny Doughty, a job developer who worked with True at NIVC Services, Inc., observed that:

> In working with [True] he has appeared shy and reserved,
> demonstrating an underlying lack of belief in his own abilities.

---

[6] Administrative Record at 350.

10

> He has shared a desire to do what is "right and proper" but has shared that he is often uncertain as to what that might be. Fearful of making a mistake or in being misunderstood, his response may be lacking or slow unless encouragement and support is provided. When faced with uncertainty, rather than experience failure he chooses inaction in its place.

(Administrative Record at 292.) Doughty further noted that True is often seen as a loner or someone who is unapproachable due to his uncertainty and anxiety of proper social mores. Doughty opined that for True and others with Asperger's disorder:

> instruction and conversation is taken literally and misinterpretation of social cues, body language and facial expression exist causing miscued response. With receptive and expressive skills "out of synch" work place challenges may result. Co-workers or supervisors may misinterpret communication resulting in [True's] becoming anxious, depressed or frustrated, and lashing out in reaction. He may also avoid the situation and not complete tasks because of uncertainty surrounding expectations.

(Administrative Record at 292.) Doughty concluded by imploring Social Security to reconsider True's application for disability. Doughty reasoned that True's struggles with social interaction, change, chaotic situations, and learning are "life-long and could result in repeated job loss or in never being hired in a position that could provide financial support needed in [True's] life."[7] Doughty maintained that True "will always struggle unless support, understanding, and adaptations remain in place."[8]

## IV. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that True is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security

---

[7] Administrative Record at 292.

[8] *Id.*

regulations. *See* 20 C.F.R. § 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Moore v. Colvin*, 769 F.3d 987, 988 (8th Cir. 2014); *Young v. Astrue*, 702 F.3d 489, 490-91 (8th Cir. 2013). The five steps an ALJ must consider are:

> (1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is or approximates an impairment listed in Appendix 1; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work.

*Hill v. Colvin*, 753 F.3d 798, 800 (8th Cir. 2014) (citing *King v. Astrue*, 564 F.3d 978, 979 n. 2 (8th Cir. 2009)); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. § 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "'bears the burden of demonstrating an inability to return to [his] or her past relevant work.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (quoting *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "'the claimant has the physical residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with [his or] her impairments and vocational factors such as age, education, and work experience.'" *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012) (quoting *Holley v. Massanari*, 253 F.3d 1088, 1093 (8th Cir. 2001)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 416.945(a)(1); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or] her limitations.'" *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)); 20 C.F.R. § 416.945.

The ALJ applied the first step of the analysis and determined that True had not engaged in substantial gainful activity since October 7, 2011. At the second step, the ALJ concluded from the medical evidence that True had the following severe impairments: mild scoliosis, Asperger's syndrome, oppositional defiance disorder, depression, and anxiety. At the third step, the ALJ found that True did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined True's RFC as follows:

> [True] has the residual functional capacity to perform a range of medium work[.] . . . [True] is further limited to sitting two hours at a time and standing two hours at a time for a total of six out of eight hours in a day; walking only three blocks at a time; . . . a job with no contact with [the] general public and

> limited contact with fellow workers; and avoid exposure to
> working at heights.

(Administrative Record at 17.) Also at the fourth step, the ALJ determined that True has no past relevant work. At the fifth step, the ALJ determined that based on his age, education, previous work experience, and RFC, True could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that True was not disabled.

## B. Objections Raised By Claimant

True argues that the ALJ's decision and RFC assessment are not supported by substantial evidence in the record. Specifically, True argues that the ALJ failed to properly consider evidence in the record from both acceptable and non-acceptable medical sources, and failed to properly evaluate his subjective allegations of disability. True maintains that this matter should be remanded for proper evaluation of the evidence in the record.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some

support in the medical evidence of record." *Casey*, 503 F.3d at 697 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

Additionally, an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

Here, the ALJ has completely failed in his duty to consider the relevant evidence, and fully and fairly develop the record for making a determination regarding whether True is disabled. For example, in his decision, the ALJ states "[t]he medical evidence of record is quite limited regarding [True's] Asperger's syndrome and depression."[9] This statement is false. The record demonstrates that True was first diagnosed with Asperger's disorder at age 13. Dr. Peltan affirmed True's Asperger's disorder at age 16. Furthermore, the *entire* record demonstrates that True was treated with individual therapy and medication management for Asperger's disorder from 2008 through 2013. In 2011, a DDS consultative examining source, Dr. Roland, one of the few sources the ALJ even mentions in his decision, diagnosed True with Asperger's disorder. Moreover, the non-examining State agency doctor, diagnosed True with an autistic disorder (Asperger's is an autistic

---

[9] Administrative Record at 18.

disorder). Additionally, multiple vocational specialists, who worked with True, stated that his vocational difficulties stemmed from his diagnosis of Asperger's disorder.

Furthermore, the ALJ's decision is devoid of any discussion of True's treating therapist, Paula K. Linnevold, LISW. Linnevold opined that:

> [True], like some people on the Autism Spectrum, initially appears to be a quiet young man with social anxiety. However, his disabilities go much deeper and his diagnosis and placement on the Autism Spectrum is accurate. [His] anxiety is caused by the fact that he has deficits in his sensory processing system--he isn't just shy or anxious. Because of this, he has had to rely on attempting to learn how to "be" by observation of others and how they react in given situations. This disorder is life-long and will cause [him] numerous challenges. . . .
>
> [He] is truly disabled by having autism and will likely have many problems with finding a place in the world of employment.

(Administrative Record at 419.) The ALJ barely mentions True's medication manager, Shelby R. Allen-Benitz, ARNP. The ALJ discounts his very limited discussion of Allen-Benitz's opinions for being contrary to the vocational counselor, consultative examining source, and True's testimony. The problem with the ALJ's reasoning is that: (1) he barely discussed True's testimony and offered no evaluation of True's testimony; (2) he cherry-picked the opinions of one vocational counselor and ignored the opinions of two other vocational counselors, all who opined that True had significant barriers to competitive employment due to his Asperger's syndrome, and (3) he cherry-picked the opinions of Dr. Roland, a one-time examining doctor, who also noted difficulties that True had due to Asperger's syndrome.[10] While the opinions of Linnevold, Allen-Benitz, and

---

[10] For example, with regard to Dr. Roland's opinions, the ALJ without explanation disregards and fails to acknowledge Dr. Roland's assessment that:

(continued...)

(continued...)

the vocational specialists are not the opinions of "acceptable medical sources," the Social Security Administration ("SSA") requires an ALJ to consider such opinions in making a final disability determination. *See* Ruling 06-03p; *Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (discussing SSR 06-03p). The ALJ did not address these non-acceptable medical treating sources as required.

Lastly, in his decision, the ALJ failed to properly evaluate True's subjective allegations of disability; in fact, the ALJ *did not* evaluate True's testimony. When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ did not give "full consideration" to the evidence presented relating to True's subjective complaints, or address *any* Polaski factor in his decision. Moreover, if an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th

---

[10](...continued)
> Garrette True is a 20-year-old single Caucasian male experiencing Asperger's Disorder and a Depressive Disorder NOS. He continues to have impairment in the use of eye-to-eye gaze, a failure to develop peer relations appropriate to developmental level and marginal emotional reciprocity. When he becomes involved in a particular interest . . . his interest[] becomes abnormal in intensity.

(Administrative Record at 332.)

17

Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Here, the ALJ made no credibility determination, let alone detail the reasons for discounting True's testimony.

In summary, the Court finds that the ALJ failed to base his RFC assessment and ultimate disability determination on the relevant evidence in the record, including all relevant medical records, observations of treating sources and other sources, and True's own description of his limitations. *See Guilliams*, 393 F.3d at 803. The ALJ failed to properly consider, and in most cases even address, True's diagnosis of Asperger's disorder, the opinions of True's treating non-acceptable medical sources (Linnevold, Allen-Benitz, and vocational specialists), and make a credibility determination regarding True's subjective allegations of disability. Accordingly, remand is necessary. On remand, the ALJ must fully and fairly develop the record in this matter, and address the medical evidence regarding True's diagnosis of Asperger's disorder, address and properly evaluate the opinions of the non-acceptable medical sources, and make a proper credibility determination for True.

### C. Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with our without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his [or her] disability by medical evidence on the record as a whole, we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled). In the present case, the Court concludes that the medical records as a whole do not "overwhelmingly support a finding of disability." *Beeler*, 833 F.2d at 127. Instead, the ALJ simply failed to fully and fairly develop the record in this matter. Accordingly, the Court finds that remand is appropriate.

## V. CONCLUSION

The Court concludes that this matter should be remanded to the Commissioner for further proceedings. On remand, the ALJ shall fully and fairly develop the record with regard to True's diagnosis of Asperger's disorder. The ALJ must also address and properly evaluate the opinions of the non-acceptable medical sources. Lastly, the ALJ shall make a proper credibility determination for True.

## VI. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

This matter is **REVERSED** and **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

DATED this 5th day of November, 2015.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA